IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APEX CLEARING CORPORATION, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counter-Defendant, | ) | |
| | ) | C.A. No. 19-2066 (MN) |
| v. | ) | |
| | ) | **CONSOLIDATED** |
| AXOS FINANCIAL INC. and, | ) | |
| AXOS CLEARING LLC, | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaimants. | ) | |

## <u>MEMORANDUM ORDER</u>

At Wilmington, this 8th day of August 2022;

Plaintiff and Counter-Defendant Apex Clearing Corporation ("Apex") and Defendants and Counterclaimants Axos Financial Inc. and Axos Clearing LLC (collectively "Axos") have been embroiled in a trademark dispute for more than two years. The present motions – Axos's Motion to Dismiss (D.I 157) and Apex's Motion For Leave To File Second Amended Complaint (D.I 162) – do not concern the merits of the parties' substantive claims.[1] Rather, Axos challenges Apex's standing to bring its claims and Apex seeks the Court's leave to amend and supplement its complaint by adding another party, Apex Fintech Solutions, LLC ("Fintech"), as its co-plaintiff.

The parties' motions are related. It is not disputed that Fintech is the owner of the trademark ("Mark") that Apex Clearing Corporation asserts is infringed. (D.I. 161 ¶ 3, D.I. 163 at 3). Apex owned the Mark when it filed its initial and amended complaint, but assigned its registration to Fintech on May 3, 2021 – roughly eleven months after the Scheduling Order's

---

[1] The curious reader will find a recounting of the parties' claims in the Court's opinion denying the parties' cross-motions for summary judgment. *See* D.I. 144.

deadline to amend pleadings (D.I. 15 ¶ 2) and a little over two months after the end of fact discovery. (D.I. 42). Shortly before the pretrial conference, Axos discovered that Apex did not own the Mark and asserted that Apex no longer has standing to raise its claims. (*See* D.I. 151 ¶¶ 49, 50; Ex. 3 ¶ 2; Ex. 7 ¶ 17; Ex. 8 ¶ 2; Ex. 17 ¶ 9). The Court postponed trial to permit the parties to address Apex's standing, and Axos then filed its motion to dismiss for lack of standing.

Apex opposes Axos's motion and asserts that it currently has standing to bring all but one of its asserted claims.[2] But to put the question of standing to rest, Apex moves for leave to amend and supplement its complaint to add Fintech as a party. Its proposed amended and supplemental Complaint is substantively identical to the presently operative pleading, as all the proposed pleading does is add Fintech as a party. (*See* D.I. 162, Ex. B). Apex's amendments do not add a legal theory or alter the remedy sought in any way. (*See* D.I. 163 at 4). Axos opposes Apex's motion, pointing out that the Scheduling Order's deadline to amend the complaint has long since passed and contending that Apex cannot satisfy the criteria to amend and supplement its complaint at this stage of litigation.

## I.    Apex's Motion for Leave to Amend and Supplement its Complaint

Apex's motion for leave to amend and supplement its Complaint comes after the Scheduling Order's deadline to do so has passed. Accordingly, the Court will grant Apex's motion only if it satisfies the standards of both Rule 16(b)(4) and Rule 15(d) of the Federal Rules of Civil Procedure. *See Componentone, L.L.C. v. Componentart, Inc.*, 2007 WL 2580635, at *2 (W.D.Pa. Aug.16, 2007) (explaining that "once the pretrial scheduling order's deadline for filing motions to

---

[2]    Apex does not contend that it has standing to bring the § 1141(1) claim, but has provided examples of courts permitting similarly situated plaintiffs to bring such a claim. (D.I. 163 at 10 n.2 (citing *Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98-Civ.-5408, 2001 WL 1456577, at *4 (S.D.N.Y. Nov. 16, 2001)).

amend the pleadings has passed, a party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading.").  Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent."  "Good cause exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *ICU Medical, Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009) (internal quotations marks omitted).  *See also Chancellor v. Pottsgrove School Dist.*, 501 F. Supp. 3d 695, 701 (E.D. Pa. 2007) ("Good cause under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order.") (internal quotation marks omitted).  Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense."  Under this Rule, "absent undue or substantial prejudice, an amendment should be allowed . . . unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment."[3] *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (internal quotation marks and citation omitted).

With respect to Rule 16(b)(4)'s "good cause" standard, Apex contends that it was sufficiently diligent for two reasons.  First, Apex believes that because the Scheduling Order's deadline for amendments passed well before it assigned its Mark to Fintech, it could not possibly

---

[3]      The Rule 15(d) standard is the same as the Rule 15(a) standard.  *See Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. CIVA 09-80-JJF-MPT, 2010 WL 1609899, at *2 (D. Del. Apr. 20, 2010) ("[T]he standard under Rule 15(d) is 'essentially the same' as that under Rule 15(a), and leave to supplement should be granted unless it causes undue delay or undue prejudice.").

have sought amendment prior to the deadline.  (D.I. 163 at 4–5).  Second, Apex points out that it "promptly sought amendment after learning that Axos would not agree to reasonable proposals to address its standing allegations." (*Id.* at 5).  Axos believes that diligence should be measured from the time that Apex assigned the Mark and, accordingly, argues that Apex was not diligent because it "did not notify Axos or even the Court of the assignment" for seven months.  (D.I. 166 at 6).  Moreover, Axos asserts that Apex was not diligent because Apex only sought leave to amend after Axos sought to move to dismiss Apex's suit.  (*Id.*).

The Court believes that Apex has shown "good cause" to modify the Scheduling Order.  As Apex points out, the April 30, 2021 transfer of the Mark occurred a little less than a year after the Scheduling Order's deadline had passed.  More importantly, Apex was reasonably diligent in seeking leave to amend once Axos raised the issue of standing.  Although Apex moved to amend its Complaint seven months after the assignment of the Mark, this does not evidence a lack of diligence because Apex reasonably believed, and still believes, that it has standing to assert its claims without Fintech as a party.  Therefore, to find Apex not diligent for failing to amend its pleading would be to penalize it for not asserting a fact that it reasonably believed was legally irrelevant.  The Court will not do that.

Two days after Axos raised its concerns with Apex, Apex moved for leave to amend the pleadings to add Fintech as a plaintiff.  (D.I. 151 ¶ 49).  Shortly thereafter, Apex and Fintech executed a formal license agreement that purports to make Apex the exclusive licensee of the Mark.[4]  (D.I. 161, Ex. C).  A month after the Court postponed the parties' trial to allow for more

---

[4]     Axos points out that Apex may not be an exclusive licensee because the license agreement states that "Licensor hereby grants to Licensee . . . the exclusive right and license (*along with Licensor*) to use the Trademarks on or in association with the Licensed Services in the United States."  D.I. 161, Ex. C ¶ 1 (emphasis added).  Whether Apex is an exclusive

careful deliberation of the question of standing, Apex formally filed a motion seeking the Court's leave to amend and supplement its complaint.  (D.I. 162).  All told, Apex diligently moved for leave to amend the Complaint once Axos raised its concern.  Accordingly, Apex has established that there is good cause to modify the scheduling order to allow for an amended pleading.

Further, the Court grants Apex's motion for leave to amend and supplement its Complaint under Rule 15(d).  Axos believes that "amendment should be denied under Fed. R. Civ. P. 15(a) because of Apex Clearing's undue delay, evidencing a dilatory motive to avoid its standing defect, and the undue and substantial prejudice to Axos by adding a new party, on which no discovery has been previously provided, on the eve of trial." (D.I. 158 at 15).  As explained above, the Court disagrees with Axos's contentions that Apex has unduly delayed in moving this Court to amend its pleading or that it had any unsavory motive in not moving to amend its pleading prior to Axos raising the issue of standing.  The Court further finds that no prejudice will result from Apex amending its pleading to add Fintech as a party.  No trial date is currently set.[5]  Further, Apex's amendment will not allow it to assert a new claim, pursue a new theory, or seek new or different damages.  Because Axos both will not suffer prejudice as a result of Apex's amendment and did not show that Apex acted with bad faith, and because amendment would clearly not be futile, the Court will grant Apex leave to file a second amended complaint.

---

licensee, however, does not bear on the question of standing because the Court is permitting Apex to amend its pleading and add Fintech as a co-plaintiff.

[5]  Axos raised the issue of standing in the parties' pretrial order, less than two months before the previously scheduled trial.  Axos proposed that the Court permit expedited briefing on the question of standing, which was rejected in light of the Court's heavy docket.  (D.I. 165 at 5:20–6:6).  Axos then agreed to postpone trial to permit the issue of standing to be briefed.  (*Id.* at 7:8–16).  The parties' trial has yet to be rescheduled.

## II.    Axos's Motion to Dismiss

Because the Court is granting Plaintiff's motion to amend, it will deny as moot Defendant's motion to dismiss (D.I. 157) as it relates to the First Amended Complaint (D.I. 48).

## III.    Axos's Request for Limited Discovery and Sanctions

Axos requests "limited discovery" should the Court grant Apex's motion to amend its complaint.  (D.I. 166 at 9–10).  Apex defined "limited discovery" as "no more than ten interrogatories, twenty document requests, ten requests for admissions, and one Fed. R. Civ. P. 30(b)(6) deposition of Apex Fintech."  (*Id.*).  Apex opposes the scope and breadth of Axos's request and submits that "a more reasonable amount of discovery consists of one or two document requests and a 30(b)(6) deposition of up to three hours in length.  Although Axos's request seems excessive in light of the nature of Apex's amendment, the Court agrees that some limited discovery should be had.  The parties shall meet and confer and come to an agreement about the nature and scope of the limited discovery needed.

Axos further "requests the Court sanction Plaintiff for its lack of diligence by awarding Axos its fees and costs in connection with the Motion to Dismiss and related briefing, and any discovery."  (D.I. 166 at 10).  The Court will not do so.  As explained above, Apex has not been impermissibly tardy and has concealed nothing in bad faith.  Accordingly, the Court finds no basis for sanctioning Apex.

## IV.    Conclusion

For the above reasons, IT IS HEREBY ORDERED that Apex's Motion for Leave to Amend and Supplement (D.I. 162) is GRANTED and Apex's Motion to Dismiss (D.I. 157) is DENIED-AS-MOOT.  The parties shall file a status report that includes a plan for the limited

discovery as well as the parties' position as to when this case will be ready for trial by September 7, 2022.

_____
The Honorable Maryellen Noreika
United States District Judge